**BROAD NATIONAL BANK, Plaintiff,**

v.

**Franklin KADISON, Defendant.**

**Civ. A. No. 82–4048.**

United States District Court,
D. New Jersey.

Feb. 8, 1983.

Donald M. Karp by John A. Cannito, Newark, N.J., for plaintiff.

George R. and William L. Handler by William L. Handler, West Orange, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, Chief Judge.

This is an appeal from an order of the United States Bankruptcy Court denying discharge of debtor, Franklin Kadison. Debtor originally filed a voluntary petition under chapter 7 of the Bankruptcy Code on March 24, 1981. Plaintiff, Broad National Bank, filed a complaint on June 30, 1981, challenging the dischargeability of debtor under sections 532(a) and 727(a) of the Bankruptcy Code. The bankruptcy court concluded that plaintiff had failed to meet its burden of proof to support the section 523(a) claim. However, the court further determined that the section 727(a) claims had been sufficiently established and that debtor had failed to adequately explain his actions. Therefore, discharge of the debtor was denied. In this appeal debtor questions the bankruptcy court's findings that (1) debtor failed to maintain adequate books and records, and (2) that debtor made a false sworn statement.

Electro-Mold Inc. is a corporation owned entirely by Elaine Kadison, debtor's wife. Franklin Kadison served as its president and had the authority both to endorse checks and draw checks on the corporate bank accounts. In late 1979 or early 1980 Electro-Mold, in a desperate financial situation, ceased operations and Franklin Kadison attempted to wind up corporate matters as smoothly as possible.

Bar Lo Carbon Products, Inc. (Bar Lo) is a corporation owned by Barry Flowers, the brother of Elaine Kadison. In February 1980 Flowers agreed to have Franklin Kadison act as a sales representative for Bar Lo and began advancing sums of money to Franklin Kadison directly. These sums would subsequently be earned by Kadison and were intended to be used to wind up Electro-Mold's affairs. Some of the checks were made payable to Electro-Mold itself while the rest were payable to Franklin Kadison.

In November 1980 Marsco Sales Company was formed as a sole proprietorship owned by Elaine Kadison and having one employee, Franklin Kadison. This proprietorship was intended to give Elaine Kadison control of the family income in order to protect it from Franklin's financial irresponsibility. Marsco was formed as a service company which would sell Bar Lo products. It is important to note that Franklin Kadison had authority to endorse checks payable to Marsco as well as draw checks on its bank accounts.

Franklin Kadison's compensation was described variously in the record as straight salary, salary plus commission, and a draw against commission. Regardless, Bar Lo began writing weekly checks to Marsco, which were received by Franklin Kadison who then endorsed and cashed them. At the end of each month a commission of three-and-one-half per cent of net sales would be paid to Marsco.

Bar Lo also reimbursed Marsco-Franklin Kadison for expenses incurred in the sales work. Franklin would draw in advance a sum of money sufficient to cover anticipated expenses. A reconciliation was supposed to have taken place each month to adjust commissions by the shortage or excess of expense money paid.

Within this framework occurred the transactions which Kadison's creditors have a right to examine in order to determine the financial situation of the debtor. During 1980 a total of $63,970.70 was paid by Bar Lo to Franklin Kadison, Marsco, and Electro-Mold. This figure includes checks written to all three of the above. Notably, Franklin Kadison had signature authority for any and all checks included in the above sum. Included in the $63,970.70 is the expense money received by Kadison, which debtor claims is approximately $12,000. No records were kept of expense advancements or monthly reconciliations, and a few receipts are all that exist of an expense record. Further, debtor asserted that his income for 1980 was $24,000, yet Elaine Kadison's testimony indicated that, regardless of salary, the Marsco bank account was used to pay household bills as well as debtor's life insurance premiums. Again, no records were kept.

Checks which supposedly were used to pay off Electro-Mold's debts were made payable to Franklin Kadison and cashed, but no records were kept of the expenditures. In sum, $63,970.70 changed hands but the final disposition of these funds is not the subject of written records.

On March 24, 1981, debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. In his sworn statement of affairs debtor stated that his 1980 income was $24,000 and that he had made no transfers of real or personal property in the year preceding the filing of the petition. The statement also noted that all of the books and records pertaining to the debtor's business affairs were in the possession of his wife. These books and records consisted only of the checking accounts maintained by Elaine Kadison and Marsco.

The standard of review to be applied by this court has been strictly defined. "[R]easonably wide discretion is lodged in the bankruptcy court in determining whether the books of account or records in a given case are sufficient to meet the requirements of the statute, and the determination of that question will not be disturbed on appeal unless it is plainly erroneous." *Johnson v. Bockman,* 282 F.2d 544, 546 (10th Cir.1960); *In Re Marx,* 125 F.2d 335 (7th Cir.1942). In addition, bankruptcy rule 810 provides

> [u]pon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses.

This is also supported by proposed bankruptcy rule 8013 which states

> [o]n an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Therefore, this court must affirm the bankruptcy court's determination unless it finds such decision to be clearly erroneous.

The law which was applied by the bankruptcy court in the present case is 11 U.S.C. § 727 which provides

> (a) The court shall grant the debtor a discharge, unless—

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, or in connection with the case—

(A) made a false oath or account.

■ The first issue for this court to examine is whether the bankruptcy court erred in finding that debtor failed to maintain adequate records. The purpose of section 727(a)(3) is to make full financial disclosure a condition precedent to the court's grant of a discharge. *In Re Underhill,* 82 F.2d 258, 260 (2d Cir.1936). Intent to conceal financial information is not a requirement in order to support an objection to a discharge. *Id.* at 259. Creditors are entitled to written evidence of the debtor's financial situation and his past business transactions for a reasonable period. The privilege of discharge is hinged on disclosure. It has been noted that perfect account-like records are not mandated, but instead records which are reasonable under the circumstances of the case. *Johnson v. Bockman,* 282 F.2d at 546; *In Re Hirsch,* 14 B.R. 59 (Bkrtcy.S.D.Fla.1981).

■ In the present case, $63,970.70 was paid during 1980 by Bar Lo to the debtor directly or through bank accounts to which debtor had access. Of this sum, $24,000 is admitted to be income earned by Franklin Kadison from Marsco. Of the remaining $39,970.70 debtor claims that approximately $12,000 was for business expenses and the remainder was a loan for Electro-Mold.[1] No documentation or records exist to support such claims. Admittedly, there are some travel-expense receipts, but there are no records of adjustments for all of the expenses. Even more critical is the fact that some of the alleged loans for Electro-Mold were in the form of checks made out to Franklin Kadison and there is no record of the expenditures of such funds.

Debtor asserts that the testimony is straightforward on these facts. However, that was not the issue before the bankruptcy court. There, the issue was whether debtor kept adequate records of his business transactions. His testimony and that of his wife and brother-in-law does not replace the written records required by statute. From the record it can be seen that the bankruptcy court did not err in its determination, much less make a clearly erroneous determination.

■ The second issue raised in this appeal is whether the bankruptcy court erred in finding that debtor made a false statement in the sworn statement of financial affairs. On March 28, 1980, a check was drawn on the Bar Lo account for $1,000 made payable to the Electro-Mold Corporation. It is this transfer which the bankruptcy court found to be made by debtor and undisclosed in the sworn statement.

Debtor asserts that since the check was drawn on Bar Lo and payable to Electro-Mold the money cannot be imputed to have belonged to him or have been transferred by him. However, this transaction cannot be characterized quite so easily. Barry Flowers included that sum of $1,000 in the $63,970.70 which he testified was commission earned by Franklin Kadison/Marsco. Debtor also testified that all of the moneys received by him or Electro-Mold were advances to him and would subsequently become earned by him. Finally, as stated before, debtor had authority to both endorse and draw checks on Electro-Mold's accounts and therefore had personal access to the funds.

---

1. Debtor makes much of the fact that the bankruptcy court labeled the entire $39,970.70 as unaccounted-for business expenses. It should be noted first that the only proof adduced that the sums were used for loans was oral testimony. Secondly, some of the loan checks were made out to Franklin Kadison personally and were cashed by him. However, no records exist to show how and where the sums were expended. The bankruptcy court's labeling of the lump sum, while not technically correct, does not change the determination in this case.

In light of these facts, it cannot be said that the bankruptcy court's determination that debtor had made a false sworn statement was clearly erroneous. Accordingly, the ruling of the bankruptcy court is affirmed. Plaintiff will submit an order within ten days. No costs.