In re Sidney R. and Susan A. BROWN, Debtors.

Terrie HARMAN, Trustee, Plaintiff,

v.

Sidney R. and Susan A. BROWN, Defendants.

Bankruptcy No. 85–55.
Adv. No. 85–41.

United States Bankruptcy Court,
D. New Hampshire.

Dec. 5, 1985.

---

Terrie Harman, Portsmouth, N.H., interim trustee.

Bruce Jasper, Newport, N.H., for debtors.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This matter came on for trial on November 13, 1985 on Trustee's Verified First Amended Complaint Objecting to Discharge. After receiving the evidence and argument of counsel, I hereby make the following findings of fact and conclusions of law.

Trustee's Amended Complaint asserts that debtors should be denied discharge on three grounds: (1) pursuant to § 727(a)(5) of the Bankruptcy Code, trustee alleges discharge should be denied due to debtors' failure to satisfactorily explain a "loss of assets" in that debtors could not account for the disposition of $3,100 in cash withdrawals from a checking account in November 1984 and prior to their February 11, 1985 filing in this court; further trustee alleges that debtors failed to adequately explain, pursuant to § 727(a)(5), the location of five vehicles and the status of the motor vehicle titles to same; (2) pursuant to § 727(a)(3), the trustee alleges that debtors have failed to keep records from which their financial condition and an explanation of the $3,100 cash "loss" might be ascertained; and (3) pursuant to § 727(a)(4)(A),

trustee alleges that debtors gave false oath by listing only one air compressor on their bankruptcy schedules while listing four such compressors on their federal income tax return, by listing bank accounts as "none" on their schedules when in fact debtors had three such accounts within the two years preceding their February 1985 filing date, and by overstating the value of the five motor vehicles in question.

Considering the evidence offered concerning each of these allegations, this opinion will first address the matter of the $3,100 in cash withdrawals and debtors' explanations and records regarding disposition of same. Both debtors testified during the November 13, 1985 hearing in this court, and I specifically find the testimony of both of them to be entirely credible considering their demeanor on the stand and their background and experience.

From the evidence it appears that Mr. Brown worked on the vehicles involved in his "on-again-off-again" business of buying wrecked autos to repair and re-sell, while Mrs. Brown attended to the financial end of the business and also took care of the debtors' personal financial affairs. The testimony of both debtors established that in late 1984 the debtors were receiving very little income from the auto-body business and received nothing from it after the first of this year. Mrs. Brown had no other employment during the relevant period—November 1984 to February 1985. There was no evidence of any other substantial income during this period and, in sum, the debtors' total income was meager at best. Adding to the debtors' difficult financial situation was a general confusion and upheaval in their affairs due to an eight month marital separation during the months immediately preceding the time period in question.

The evidence establishes total cash withdrawals in November 1984 of $3,100 from a checking account which had been maintained by Mr. Smith in another city prior to the marital reconciliation of the parties. The debtors testified that at various points

this cash, in part, remained in the debtors' pocket and, in part, was deposited into another checking account.

Debtors "kept up their payments" and made household expenditures for utilities and the like, using the cash itself and also by drawing checks on this second checking account. Somewhere in the neighborhood of $2,400 in debt payments and household expenses are accounted for in this way from the $3,100 in cash withdrawals. The crucial fact making this use of the $3,100 so believable is that the debtors had virtually no other income during the relevant period and hence were forced to live on the withdrawn $3,100.

A $510 payment to their lawyer for costs and fees in the present proceeding, and miscellaneous family living expenses such as food and clothing, easily account for any balance of the $3,100 in cash.

■ The context of the present matter— objections to discharge under § 727(a) of the Code—must also be born in mind. In keeping with the Congressional intent to provide debtors with a fresh start, the court must be especially circumspect when dealing with a right to a discharge. Hence, § 727(a) must be construed strictly against the objector and liberally in favor of the debtor. *In re Harron*, 31 B.R. 466 (D.Ct. 1983); *Matter of Silverman*, 10 B.R. 727 (S.D.N.Y.1981). The main thrust of the objections to discharge provided by § 727(a), is to furnish a vehicle under which *abusive* debtor conduct can be dealt with by denial of discharge. *In re Harron, supra;* Norton, *Bankruptcy Law and Practice* § 27.16 (1981).

■ Turning to an examination in particular of the trustee's allegation that discharge should be denied these debtors under § 727(a)(3) for a failure to keep adequate records, I note at the outset that this court has reasonably wide discretion in determining whether the books and records produced are sufficient to meet the requirements of the statute. *Broad Nat. Bank v. Kadison*, 26 B.R. 1015 (D.N.J.1983); *In re Kottwitz*, 42 B.R. 566 (W.D.Mo.1984).

However, "intent to conceal financial condition" is not a necessary element to support denial of discharge for failure to keep records. *Koufman v. Shienwald*, 83 F.2d 977 (1st Cir.1936); *In re Underhill*, 82 F.2d 258 (2nd Cir.1936) *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936); *Broad Nat. Bank v. Kadison, supra; Matter of Silverman, supra;* 4 *Collier on Bankruptcy* ¶ 727.03 at p. 727–26 (15th ed. 1985). The present statutory language is essentially unchanged from the statute in force at the time of these early decisions.

■ What *is* required of the debtor is that he "take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate". *Koufman v. Shienwald*, 83 F.2d 977 (1st Cir.1936). Whether a failure to keep records, total or partial, will be justifiable is a question of fact to be determined in each instance under the particular circumstances of the case. *Koufman v. Shienwald, supra; In re Underhill, supra; Broad Nat. Bank v. Kadison, supra; Matter of Silverman, supra.* In short, what is required is records that are "reasonable under the circumstances".

Given that the debtors' testimony was believable as to their income and expenses during the relevant period and that there was no evidence to controvert their assertion that portions of the $3,100 in cash were deposited into the second checking account over a period of time, I find that said deposits were in fact made by debtors even though no written receipts for such deposits were produced.

While the debtors lack receipts for some of the cash expenditures and are missing some of the checks drawn from the second checking account, I find that the debtors' testimony and the available written documentation to be consistent and to provide a satisfactory explanation of the affairs of *these* debtors. *Matter of Silverman, supra* at 731–32 (a bankrupt's records need not state in detail all of the transactions if they sufficiently identify the transactions so that intelligent inquiry can be made concerning them.) "The mere failure to

keep all cancelled checks ... may not in itself bar a discharge, for such a requirement might be unreasonable, as common practice has in fact deemed it to be". 4 *Collier on Bankruptcy* ¶ 727.03 at p. 727–40 (15th ed. 1985); *In the Matter of Martin,* 554 F.2d 55 (2nd Cir.1977); *In re Servel,* 30 F.2d 102 (D.Idaho 1928).

■ On the other hand, if a debtor keeps books but the objecting party, as here, makes out a prima facie case of impropriety in that items are missing, the debtor must affirmatively justify the propriety. 4 *Collier, supra* at p. 727–44. In keeping with the longstanding principle that the custom of a normal person under the same circumstances should be given due weight, *In re Miller,* 5 F.Supp. 913 (D.Md.1934), I conclude that the instant matter falls well within the ambit set by an earlier decision in this district, *Matter of Russell,* 52 F.2d 749 (D.N.H.1931), wherein it was held that the crude bookkeeping methods of a lumberman were insufficient to deny discharge because the books were sufficient for *his* business. *See also, Anderson v. Haddonfield Nat. Bank,* 94 F.2d 721 (3rd Cir.1938) (discharge granted physician whose only record was of income.)

■ It is sufficient if the books and records are kept, if required at all, so as to reflect with a fair degree of accuracy, the debtor's financial condition and in a manner appropriate to his business. 4 *Collier, supra* at p. 727–34; *Matter of Underhill,* 82 F.2d 258 (2nd Cir.1936); *Hedges v. Bushnell,* 106 F.2d 979 (10th Cir.1939) (gasoline filling station operator); *Morris Plan Industrial Bank v. Dreher,* 144 F.2d 60 (2nd Cir.1944) (itinerant peddler). While the statute refers to "financial condition *or* business transactions", the debtors here are relatively unsophisticated and the matter in controversy is their non-business disposal of some $3,100 in a personal bank account. The trustee never has attacked any lack of records in Mr. Brown's "business" such as it was. This is simply not a case where the lack of records can be found sufficient to deny discharge. *Compare, In re Harron,* 31 B.R. 466 at 469–70 (D.Ct.1983).

Further, in the instant matter, trustee is not alleging fraud on the part of the debtors, but merely that they lack adequate records concerning the $3,100 in question. There is no indication in the evidence that in November 1984 at the time of the $3,100 withdrawal, debtors knew or contemplated filing bankruptcy. Indeed it is uncontroverted that they kept making their scheduled monthly payments right up to the filing in February 1985. I conclude that in these circumstances it was reasonable for the debtors to keep only the records they kept, i.e., checkbooks and miscellaneous receipts. These are the types of records that it is reasonable to expect debtors such as the Browns to keep. The debtors have produced records "reasonable under the circumstances". *Koufman v. Shienwald, supra; In re Underhill, supra; Broad Nat. Bank v. Kadison, supra; Matter of Silverman, supra.*

■ Turning to the claim that the debtors should be denied discharge due to a failure to satisfactorily explain the location of five motor vehicles and the titles to same, I find that the evidence does provide an adequate explanation of these matters. Further, the explanations provided were credible in the circumstances in which these debtors found themselves, which included a marital separation of some duration, and the fact that both debtors moved from their home shortly before the bankruptcy petition was filed. These circumstances account in large measure for Mr. Brown's lack of knowledge as to where each vehicle was at various points in time.

■ The above discussion, disposes of the trustee's allegations pursuant to 11 U.S.C. § 727(a)(3) and § 727(a)(5). The trustee's remaining objections to discharge rest upon § 727(a)(4)(A)—that the debtors gave false oath by listing only one air compressor on their bankruptcy schedules while listing four such compressors on their federal income tax return; by listing bank accounts as "none" on their schedules when in fact debtors had three such ac-

counts within the two years preceding their February 1985 filing date; and by overstating the value of the five motor vehicles in question.

Taking each of these allegations in turn, I find that, as to the air compressors there was no evidence that the debtors had any intent to deceive the trustee by failing to list three of the four compressors. Section 727(a)(4) requires that debtors act "knowingly and fraudulently". The debtors' testimony that three of the four compressors were junk and had no value was entirely believable. While incorrect as matter of law in failing to list the same in their schedules, this omission does not support a denial of discharge under § 727(a)(4)(A).

As to the debtors listing "none" in response to schedule questions concerning their bank accounts, again the court finds it entirely believable that *these* debtors interpreted this as not including checking accounts. Further, my conclusion that the evidence establishes no intent to deceive by debtors' failure to list the checking accounts is buttressed by the fact that the debtors brought all their checkbooks to the first meeting of creditors as the trustee requested. (Trustee Exhibit # 3). *Cf. In re Hatch*, 43 F.2d 463 (D.Me.1930). The usual violation in this area is where the debtor mentions one or more accounts but conveniently "omits" another account with obvious intent to keep that information from the trustee.

Finally, there was no evidence offered in support of trustee's claim that debtors' statements as to the value of the five motor vehicles were intentional untruths.

Accordingly, in accordance with the above, trustee's complaint shall be dismissed. A separate judgment dismissing same shall be entered.