**In re Alan L. BECKER f/d/b/a Becker Enterprises, Debtor.**

**Harold BLOCKMAN, Plaintiff,**

**v.**

**Alan Lee BECKER, Defendant.**

**Bankruptcy No. 3–85–01942.
Adv. No. 3–86–0033.**

United States Bankruptcy Court,
E.D. Tennessee.

May 5, 1987.

Stone & Hinds, Steven D. Lipsey, David Roberts, Knoxville, Tenn., for plaintiff.

Goodman, Cannon & McNabb, Daniel J. Goodman, David W. McNabb, Knoxville, Tenn., for defendant.

CLIVE W. BARE, Bankruptcy Judge.

The debtor herein filed a voluntary Chapter 7 bankruptcy petition on November 14, 1985. Plaintiff seeks denial of the debtor's discharge for alleged failure to keep books and records from which his business transactions or financial condition can be ascertained. 11 U.S.C.A. § 727(a)(3) (West 1979). Plaintiff asserts that the records kept by the debtor are insufficient to reconstruct his business affairs or determine his financial condition. The debtor contends that he is entitled to a discharge because the records kept do enable his business transactions and his financial condition to be ascertained, and that the failure to keep more extensive records was justified under all of the circumstances of this case. Trial was held March 2, 1987. This is a core proceeding, and this court has jurisdiction under 28 U.S.C.A. §§ 1334 and 157(b)(2)(J) (West Supp.1987).

I

The debtor was engaged in a home construction business in Knoxville, Tennessee. His business was known as Becker Enterprises. He began operations in 1983 when he built a residential house in Knox County for speculative resale purposes. This was his first venture in the construction business. Money to fund the project was borrowed. The debtor stated on one occasion that he netted $14,000.00 on this house, and then at another time only $7,000.00. He now insists he earned no profit because the house was not sold for more than a year after its completion.

In October 1983 the debtor began work on his second construction project, several condominium units called Francis Woods. Once again, all of the funds necessary to build the units were borrowed from various sources, including Mr. Harold Blockman, plaintiff herein. The project was abandoned in August 1984 due to financial problems. The property was then foreclosed upon by various lenders, leaving substantial unpaid bills and loans related to the project.

At the first meeting of creditors the trustee requested that the debtor turn over all of his books and records. Pursuant to this request, the debtor turned over a large box containing various documents, i.e. invoices, bills, legal documents and bank statements. The records were submitted in an unorganized manner, and some records, primarily bank statements, had apparently been lost by the debtor.

Upon the filing of this adversary proceeding, the debtor obtained pursuant to a subpoena copies of his bank statements and cancelled checks.[1] The debtor then, under the guidance of his accountant, prepared spreadsheets that purport to show the course of his business dealings in transactions on the Francis Woods project. The debtor utilized his bank statements, receipts, and memory to prepare the spreadsheets. He did not keep separate records on each building, did not keep a cash ledger, and did not file tax returns.

II

The issue before the court is whether the debtor failed to keep or preserve records from which his financial condition or business transactions might be ascertained. If the court determines such records were inadequate, the debtor may nonetheless be entitled to discharge if he can justify his failure to keep or preserve the records.

Section 727(a)(3) of Title 11 of the United States Code provides as follows:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(3) the debtor has ... failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transac-

---

1. Becker maintained a money market account and a NOW checking account at American Savings & Loan Association in Knoxville. He commingled his personal and business funds in both accounts.

tions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case....

█ This requirement is imposed to enable creditors, with the assistance of adequate books and records, to ascertain the true status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. 4 *Collier on Bankruptcy* § 727.03(1) (15th ed. 1987). The statute is to be construed liberally in favor of the debtor and strictly against the complaining creditor. *Matter of Silverman*, 10 B.R. 727 (Bankr.S.D.N.Y.1981). This construction implements the intent of Congress to provide debtors with a fresh start. Hence, "[t]he main thrust of the objections to discharge provided by § 727(a), is to furnish a vehicle under which *abusive* debtor conduct can be dealt with by denial of discharge." *In re Brown*, 56 B.R. 63, 66 (Bankr.N.H.1985). The burden of proof with respect to a denial of discharge rests upon the complaining creditor. Bankruptcy Rule 4005.

"The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances." *In re Switzer*, 55 B.R. 991, 997 (Bankr.S.D.N.Y.1986). In determining the "reasonableness" of these records, the court should look to:

> education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*Seidle v. Escobar (Matter of Escobar )*, 53 B.R. 382, 384 (Bankr.S.D.Fla.1985), *quoting Milam v. Wilson*, 33 B.R. 689, 692 (Bankr. M.D.Ga.1983).

### III

Plaintiff objects to debtor's discharge on essentially the following grounds:

(1) There is no showing of the source of funds or the disbursements thereof by the bank records for the period of time representing the Carrolwood project (the speculative house).

(2) The books and records tendered only cover the period of the Francis Woods project (the condominium units). Further, these records are incomplete and inadequate.

(3) Subsequent to the abandonment of the Francis Woods project, Becker was a salaried employee (earning $2,000.00 per month) at Knox Dental. During this thirteen (13) month period prior to filing his bankruptcy petition, Becker kept no books or records, not even a checking account.

The court will address each objection individually.

█ (1) The plaintiff claims no books or records have been tendered regarding the source and disbursement of funds during the construction of the Carrolwood residence. However, the debtor has tendered invoices, receipts, etc. for this period of time. These records, poorly kept and poorly organized, are inadequate in many ways. But for purposes of ascertaining the debtor's financial condition and business transactions, they are reasonably sufficient.

(2) During the Francis Woods project a total of approximately $235,000.00 was borrowed by the debtor. Of that sum, $195,-468.00 went through his bank account, the records of which plaintiff concedes are sufficient to ascertain the debtor's business transactions, thereby leaving $39,532.00 unaccounted for by his bank records. Half of this amount is accounted for with invoices, receipts, etc., but half, plaintiff claims, can be traced only with the aid of the debtor's memory.

█ A debtor is required to keep records that identify his business transactions so that intelligent inquiry can be made concerning them, or more simply, that creditors are able to learn what the debtor did with his estate. *Silverman, supra,* at 731–32; *Brown, supra,* at 66.

█ Although both expert witnesses testified the debtor did not keep the type of records that should be kept in his line of

work, this is not the guiding principle required by the statute. No particular form of record-keeping is required, so long as the records reflect the debtor's transactions. *In re Underhill*, 82 F.2d 258, 259 (2nd Cir.1936), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936). More complete and organized records would have made it easier on the creditors and the court, but the lack thereof will not bar the debtor's discharge if his financial condition can still be ascertained.

While the debtor's records are poor at best and lack some receipts for cash expenditures and the like, the debtor's testimony and available records establish a satisfactory explanation of his business affairs to enable his creditors to ascertain his financial condition. Even plaintiff's own expert concedes as much.

Q. [Goodman] So you are of the opinion that Mr. Becker's records are sufficient to put you on notice as to his financial transactions, who was involved, and what was involved.

A. [Lowe] Yes, by going to these third parties.

Transcript of Proceedings at 148 (March 2, 1987).

█ The creditor is not required to sift through voluminous documents, or to indulge in speculation about where the spent funds are, as properly pointed out by the plaintiff. The creditor is, however, burdened with proving the debtor's financial position *cannot* be ascertained.

With respect to the burdens to be imposed on the various parties, Rule 407 (predecessor to Rule 4005) of the Rules of the Bankruptcy Procedure provides that a plaintiff ... has the burden of proving facts essential to his objection to the discharge. This rule does not change the initial burden which is placed upon the bankrupt of producing records from which his financial condition may be ascertained. See Advisory Committee's Note to Bankruptcy Rule 407; *In re Martin*, 554 F.2d 55, 58 (2d Cir.1977).

*In re Lefkowitz*, 4 Bankr.Ct.Dec. (CRR) 835, 836 (S.D.N.Y.1978), *aff'd* 603 F.2d 213 (2nd Cir.1979), *cert. denied*, 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 45 (1979).

█ The plaintiff has failed to carry his burden with regard to the debtor's records. On the contrary, the debtor has proven to this court that his records are reasonably sufficient to put his creditors on notice as to his financial condition. Despite the poor quality of his records, all that is necessary is that his creditors be able to ascertain his financial condition. They can do so here.

█ (3) Finally, plaintiff contends that a lack of records during the thirteen (13) months the debtor was a salaried employee should bar his discharge. During this time he had abandoned all work on his business projects.

A debtor that is not engaged in a business is held to the same standard as an ordinary consumer debtor. The fact that Becker did not maintain a checking account during this period will not prejudice his right to a discharge, as a consumer debtor cannot be required to keep a checking account. Further, the money earned during this time need not be documented with the specificity required in a business. Becker earned only a monthly wage during this thirteen (13) month period and the salary earned was necessary for basic living expenses. His failure to keep records for this period is reasonable under the circumstances.

### IV

The records maintained by the debtor, together with the subsequent reconstruction of his business transactions from cancelled checks and bank statements obtained from the banking institution, are sufficient to determine the debtor's financial condition and business transactions. The objection to discharge will be overruled.

The foregoing constitutes findings of fact and conclusions of law, Fed.R.Bankr.P. 7052.