**In re Marjorie Maree McCALL a/k/a Marjorie Maree McCall Cavalieri, Debtor.**

**Elaine P. Denny FORSTALL, Plaintiff,**

**v.**

**Marjorie Maree McCALL a/k/a Marjorie Maree McCall Cavalieri, Defendant.**

**Bankruptcy No. 81–04297F.**
**Adv. No. 86–1136F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 6, 1987.

Bernard H. White, Radnor, Pa., for plaintiff, Elaine P. Denny Forstall.

Roderick D. Mathewson, Norristown, Pa., for debtor, Marjorie Maree McCall a/k/a Marjorie Maree McCall Cavalieri.

Leo F. Doyle, Philadelphia, Pa., trustee.

## OPINION

BRUCE FOX, Bankruptcy Judge.

■ This is an adversary proceeding instituted by plaintiff Elaine P. Denny Forstall against the debtor in this chapter 11 case, Marjorie Maree McCall (a/k/a Marjorie Maree McCall Cavalieri). The plaintiff seeks a determination pursuant to 11 U.S.C. § 523(a)(2)(A) that the debtor's obligation to her is excepted from discharge. The plaintiff also objects to the debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(3).[1]

---

1. The plaintiff also argues in her posttrial memorandum that discharge should be denied pursu-

Trial of this proceeding was held on March 18, 1987. At that time, the debtor was not present, but she was represented by counsel who agreed, on behalf of the debtor, that the case should go forward.

After considering the evidence and the post-trial memoranda submitted by the parties, I find that: (1) the debtor's obligation to the plaintiff is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); and (2) the plaintiff has not established grounds for denying debtor her discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(3).[2]

### I.

Section 523(a) of the Bankruptcy Code provides that an individual debtor is not discharged from any debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

Recently, in *In re Paolino*, 75 B.R. 641, 646 (Bankr.E.D.Pa.1987) (footnote omitted), I set forth the applicable legal principles in a case under section 523(a)(2)(A) as follows:

Section 523(a)(2)(A) is designed to render nondischargeable debts arising from conduct involving "moral turpitude or intentional wrong." *In re Gelfand*, 47 B.R. 876, 879 (Bankr.E.D.Pa.1985); *accord, Neal v. Clark*, 95 U.S. (5 Otto) 704, 709, 24 L.Ed. 586 (1877). As an exception to discharge, it is narrowly construed against the creditor and in favor of the debtor. *E.g., In re Gelfand; In re Emery*, 52 B.R. 68 (Bankr.E.D.Pa.1985). In order to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must prove

that: (1) the debtor made a materially false representation; (2) the representation was made with intent to deceive; (3) the creditor justifiably relied on the representation; and (4) the creditor sustained proximate damage as a result of the representation. *In re Gelfand*, 47 B.R. at 879; *accord, In re Woods*, 66 B.R. 984 (Bankr.E.D.Pa.1986). The burden of proof is on the creditor, which must establish its case by clear and convincing evidence. *In re Fitzgerald*, 73 B.R. 923 (Bankr.E.D.Pa.1987); *In re Woods; In re Woerner*, 66 B.R. 964 (Bankr.E.D.Pa.1986); *In re Emery*.

The plaintiff attempted to establish its entire case against the debtor through the admission of single exhibit, P–1. Exhibit P–1 consists of the Findings of Fact and Conclusions of Law With Decree Nisi dated April 1, 1987 and an Amended Decree Nisi dated April 17, 1985 entered by Judge Horace A. Davenport of the Pennsylvania Court of Common Pleas in the case *Elaine P. Denny v. Marjorie M. Cavalieri and William J. Cavalieri*, No. 78–00995 (C.P. Dela.). The state court decision consists of fifty four findings of fact and twenty conclusions of law. Judge Davenport's detailed factual findings are essentially as follows:

The plaintiff and the debtor met in 1968 and soon became friends. At that time, the plaintiff was a twenty-six year old widow. By the time the plaintiff remarried in 1973, she considered the debtor her dearest and closest personal friend. Some time in 1973, while the parties were vacationing together in Florida, the plaintiff revealed to the debtor that the plaintiff held a claim against the Bishop Nursing Home in the amount of $285,000.00 with interest accruing at 8% per year. Shortly afterwards,

ant to 11 U.S.C. § 727(a)(5). Subsection (a)(5) is not mentioned in the plaintiff's complaint; nor did plaintiff make any reference to that subsection at trial. In these circumstances, I agree that the plaintiff may not raise the issue for the first time at this stage of the case. Under section 727(a)(5), once the creditor meets an initial burden of going forward with evidence of a loss of assets, the burden of going forward with evidence to explain the loss shifts to the debtor. 4 *Collier on Bankruptcy* ¶ 727.08, at 727–72 to 727–73 (15th ed. 1987). Assuming

*arguendo* that the plaintiff met her initial burden of going forward, it would be inequitable, in light of the shifting burden, to allow the plaintiff to proceed on this theory without having given the debtor notice of it prior to trial.

**2.** This is a core matter. 28 U.S.C. § 157(b)(2)(I) and (J). This memorandum opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankr. Rule 7052.

the debtor told the plaintiff that the debtor's husband (William J. Cavalieri) was a financial advisor for wealthy people and suggested that the plaintiff invest her money from the Bishop Nursing Home with Mr. Cavalieri because he would be able to obtain a 12% annual return on the money. The debtor continued to urge the plaintiff to invest money with Mr. Cavalieri from time to time thereafter and continued to represent that the plaintiff would receive a 12% annual return. The plaintiff was vulnerable to the debtor's influence because of the plaintiff's lack of business and financial experience, her anxiety and emotional problems and her limited education. The debtor was an older woman who held herself out as knowledgeable about financial matters and qualified to act as the plaintiff's financial adviser. Eventually, the plaintiff acceded to the debtor's advice. During the period May 14, 1974 to September 16, 1976, the plaintiff, primarily from funds obtained by accelerating the payments owed her by the Bishop Nursing Home, delivered checks to the debtor totalling $134,000.00. In delivering these funds, the plaintiff was induced by and relied upon the repeated representations made by the debtor that Mr. Cavalieri invested money for other people and would obtain a 12% return on the money invested. The representations were false and the debtor knew that they were false. The debtor never intended to give the funds to her husband for investment purposes but rather, planned to and did retain and use the money for her own and her husband's benefit. None of the money was ever invested, nor was any of the principal amount repaid. The debtor did make certain payments to the plaintiff which were represented to be interest payments in order to give the false impression that the money was being invested.

As a result of these factual findings, the state court issued an amended decree nisi in which it ordered and decreed that: (1) that the debtor and her husband were holding $40,000.00, plus interest, in a constructive trust for the plaintiff; (2) in addition to the sum held in a constructive trust, the debtor and her husband owed the plaintiff an additional $94,000.00; and (3) certain credits would be given to the defendants to reflect their repayment of $17,000.00 to the plaintiff.

Based on Judge Davenport's findings of fact and conclusions of law, the plaintiff invokes the doctrine of collateral estoppel (or issue preclusion) and argues that she has established all of the elements necessary to prove her case under 11 U.S.C. § 523(a)(2)(A). The debtor disputes that the doctrine of collateral estoppel may be applied in this case.

In this circuit, *Matter of Ross*, 602 F.2d 604 (3d Cir.1979), although decided under the prior Act, is binding authority. *See In re Paolino*, at 647 (decisions under section 17a of the Act have precedential value under 11 U.S.C. § 523(a)(2)). In *Ross*, the Third Circuit Court of Appeals held that the collateral estoppel doctrine may be applied to bar relitigation of dischargeability issues if: (1) the issue sought to be precluded is the same as that involved in the prior lawsuit; (2) the issue was actually litigated; (3) the issue was determined by a valid and final judgment; and (4) the determination was essential to the prior judgment. *Id.* at 608–09. *See generally* Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy (First Installment)*, 58 Am. Bankr.L.J. 349, 358 n. 52 (1984) (discussion of minor differences between the Act in other circuits and that set forth in *Ross* ).[3]

---

**3.** The commentator cited in the text points out that the formulation of the collateral estoppel doctrine in *Ross* does not acknowledge the customary federal court practice, pursuant to 28 U.S.C. § 1738, of giving state court judgments the same preclusive effect they would be given by the law of the state whose court rendered the judgment. 58 Am.Bankr.L.J. at 357 & n. 50. In a second article on the subject, the commentator recommends that federal courts do so. Ferriel, *The Preclusive Effect of State Court Deci-*

*sions in Bankruptcy (Second Installment)*, 58 Am.Bankr.L.J. 55, 67–68 (1985). Some bankruptcy courts have applied state preclusion law in dischargeability proceedings. *In re Eadie*, 51 B.R. 890 (Bankr.E.D.Mich.1985); *In re Byard*, 47 B.R. 700 (Bankr.E.D.Tenn.1985). A countervailing consideration, however, is the strong policy in favor of a federal determination on dischargeability embodied in the exclusive jurisdiction given to the federal courts. *See Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d

In determining whether these standards have been met, the bankruptcy court must carefully review the state court record. *Ross*, 602 F.2d at 608 & n. 10.

■ The debtor asserts that the plaintiff has not satisfied the requirements set forth in *Ross*. Her argument is as follows: (1) the fraud necessary to determine a debt to be nondischargeable under section 523(a)(2)(A) is actual fraud, as opposed to constructive fraud; and (2) the state court findings were limited to a determination whether a constructive trust should be imposed based on a confidential relationship between the parties and unjust enrichment; and (3) the state court made no findings of actual fraud. I agree with the debtor's premise, *i.e.*, that the plaintiff must establish that the debt arises from actual, not constructive, fraud. *See In re Paolino*, at 647, *citing* 124 Cong.Rec. 32398–99 (1978) (statement of Sen. DeConcini); 124 Cong. Rec. 32998 (1978) (statement of Rep. Edwards). However, as explained below, I disagree with the debtor's characterization of the state court decision and I conclude the facts necessarily found by Judge Davenport preclude the debtor from disputing that her debt to the plaintiff arose from conduct amounting to actual fraud.

■ The fundamental flaw in the debtor's argument is that she misconceives the nature of this court's inquiry in determining whether issues shall be precluded from relitigation. In this case, I must review the state court record to determine whether *factual* issues were necessarily decided in the prior litigation. If it is determined that relitigation of those factual issues is barred by collateral estoppel, I must then apply the legal standards of 11 U.S.C. § 523(a)(2)(A) in order to decide whether the debt is nondischargeable. *See In re Halpern*, 810 F.2d 1061 (11th Cir.1987); *Spilman v. Harley*, 656 F.2d 224, 227–28 (6th Cir.1981); *In re Wilson*, 72 B.R. 956, 959 (Bankr.M.D.Fla.1987); *Matter of Church*, 69 B.R. 425 (Bankr.N.D.Tex.1987). The debtor erroneously assumes that relitigation of facts necessarily decided in the state court litigation cannot be precluded unless the plaintiff's state court lawsuit was itself solely an action to recover for fraud. In doing so, the debtor has confused the doctrine of res judicata (or claim preclusion) with collateral estoppel. *See In re Halpern*, 810 F.2d at 1063–64.

■ Upon review of Judge Davenport's detailed factual findings, it is clear, notwithstanding the debtor's assertions to the contrary, that he found all the facts necessary for me to conclude that the debt in question arose due to the debtor's actual fraud. The debtor made materially false representations to the plaintiff, *see* Exhibit P–1 (state court findings), nos. 13, 22–23, 34, 37, 39–41, 53. The representations were intended to deceive the plaintiff, *see id.* nos. 31, 35, 37. The plaintiff justifiably relied upon the representations, *see id.* nos. 29, 42–43. And, the plaintiff suffered proximate damage as a result of the debtor's conduct, *see id.* nos. 20, 29–30, 49–50. The factual findings are amplified by Judge Davenport's express "legal" conclusion that the plaintiff "met her burden of proof that the Defendant's [sic] had perpetrated a fraud upon her." Exhibit P–1 (state court conclusions of law), No. 9.[4]

767 (1979); *Matter of Church*, 69 B.R. 425 (Bankr.N.D.Tex.1987). It is possible that federal bankruptcy policy on this issue would override the full faith and credit statute. *See Matter of McMillan*, 579 F.2d 289, 293–94 (3d Cir.1978) (Gibbons, J., concurring).

4. While the state court's factual findings are unambiguous, I rely on the court's "legal" conclusion that fraud was committed only insofar as it further explicates the factual findings. It is appropriate to do so in this case since a finding of fraud is probably a mixed fact-law issue, rather than a pure legal issue, and the state court's conclusion that fraud occurred was reached only after detailed factual findings were set forth. *See generally Restatement (Second) of Judgments* § 27, comment c (1982) (relitigation may be precluded on evidentiary fact or ultimate fact). I note that the legal standard employed by the state court in evaluating whether fraud occurred is the same as that employed by many bankruptcy courts, including this court, under 11 U.S.C. § 523(a)(2)(A). *See* Exhibit P–1 (state court conclusions of law), no. 1. In addition, the state court, like many bankruptcy courts, including this court, held that the plaintiff has the burden of proving fraud by clear and convincing evidence. *See id.* no. 7. *See generally* Ferriel, *The Preclusive Effect of State Court Decisions in Bankruptcy (First*

The debtor also argues that any findings made by the state court on the issue of the debtor's fraudulent intent were not necessary to the decision in a case in which the plaintiff sought the imposition of a constructive trust. I do not agree.

Before the trial of the case in state court, the Common Pleas Court initially dismissed the plaintiff's case after the debtor and her husband filed preliminary objections. The Pennsylvania Superior Court reversed the dismissal in a reported decision, *Denny v. Cavalieri*, 297 Pa.Super 129, 443 A.2d 333 (1982). The Superior Court decision in *Denny*, therefore, serves not only as an appellate court statement of applicable Pennsylvania law, but was also "law of the case" for the trial court after remand. In *Denny*, the Superior Court stated that a constructive trust may arise

> "where there is a breach of confidential relationship by the transferee [of the property in dispute], *or it may arise out of circumstances evidencing fraud*, duress undue influence or mistake."

207 Pa.Super at 133, 443 A.2d at 333 (emphasis added), *quoting Chambers v. Chambers*, 406 Pa. 50, 54, 176 A.2d 673, 675 (1962).

I am satisfied that the state court's findings relating to fraud were essential to its decision. Significantly, the state court ruled that only a portion of the debtor's total liability (*i.e.*, $40,000.00 of the total $134,000.00 plus interest) gave rise to a constructive trust. The balance of the debtor's liability ($94,000.00 plus interest) was necessarily based upon a finding of fraud.

With respect to the amount of the constructive trust, the debtor argues that the court's decision was based on principles of unjust enrichment and a finding of fraud was not therefore not necessary to the court's ruling. However, I interpret the state court decision differently. There is no rigid standard for determining whether a court of equity in Pennsylvania should impose a constructive trust. *Denny v. Cavalieri*. Sitting as a court of equity, the Common Pleas court determined that, in light of the debtor's fraudulent conduct, it would impose a constructive trust to the extent that the plaintiff could trace the fraudulently obtained funds. The plaintiff could only trace $40,000.00, which was used to pay off a lien on the real estate then owned by the debtor. Thus, the state court imposed a constructive trust solely due to the debtor's fraud and limited the extent of the trust based on the plaintiff's failure to trace all of the funds. In this respect, the finding of fraud was essential to the court's decision.[5] That the law theoretically provides that a constructive trust can be imposed for reasons other than fraud does not make a court's findings with respect to a party's fraud unnecessary to its decision for purposes of collateral estoppel where, as here, the court plainly based its imposition of the trust on the fraudulent conduct.

It is clear that the state court based the balance of the debtor's liability ($94,000.00) on the underlying fraudulent conduct as well. Thus, the entire debt arose from actual fraud.

For these reasons, I conclude that the debtor's objections to the application of the doctrine of collateral estoppel are without merit. Upon consideration of the detailed findings of fact and conclusions of law issued by the state court, I conclude that

---

*Installment)*, 58 Am.Bankr.L.J. 349, 362–63 (1984) (if the standard of proof required to be met in dischargeability proceedings is more burdensome than the standard employed in the prior litigation, preclusive effect cannot be given).

5. The debtor is correct that the state court also made a finding of unjust enrichment. Unjust enrichment can, in some situations, provide a basis for imposing a constructive trust. The debtor may be arguing that collateral estoppel should not be applied with respect to the $40,-000.00 constructive trust because the findings

relating to fraud were, at most, an alternative basis for the court's decision. *See Restatement (Second) of Judgments* § 27, comment i (1982). However, this argument cannot prevail under a fair reading the state court decision. It is clear that the court's finding of unjust enrichment was *itself totally dependent on its finding that the debtor had obtained the funds in question by her fraud. See* Exhibit P–1 (conclusions of law), no. 13 n. 3. If anything, the finding of unjust enrichment, not fraud, was unnecessary to the decision.

the plaintiff has met her burden of establishing that the debtor's obligation to her is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

## II.

Section 727 of the Bankruptcy Code provides, in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or another officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . .

As Judge Scholl stated in *In re Woerner*, 66 B.R. 964, 973 (Bankr.E.D.Pa.1986):

The analysis of whether a discharge should be denied must start with the premise that the denial of discharge to a debtor is not a step to be taken lightly. Objections to discharge must be construed strictly against the objector and liberally in favor of the debtor. *Matter of Decker*, 595 F.2d 185, 187 (3d Cir. 1979); *In re Gelfand*, 47 B.R. 876, 879 (Bankr.E.D.Pa.1985); *In re Kunec*, 27 B.R. 650 (Bankr.M.D.Pa.1982); *In re Whiting*, 10 B.R. 687 (Bankr.E.D.Pa. 1981). Public policy requires that objections to discharge not be easily granted.

And, as another court observed, "[t]he main thrust of the objections to discharge is to furnish a vehicle under which an *abu-*

*sive* debtor can be dealt with by denial of discharge." *In re Brown*, 56 B.R. 63, 66 (Bankr.D.N.H.1985) (emphasis in original); *accord, In re Schultz*, 71 B.R. 711, 718 (Bankr.E.D.Pa.1987).

The plaintiff's request for a denial of discharge under section 727(a)(2) is based on the debtor's disposition of two items of personal property. The evidence produced at trial on the issue was scanty.

The plaintiff introduced into evidence the debtor's answers to interrogatories which had been propounded. In the answers, the debtor averred that: (1) she acquired a five carat engagement ring in about 1955 and had disposed of the ring in the late 1970's; and (2) she acquired a 1977 Mercedes Benz automobile in 1977 and had disposed of it on October 19, 1981, the date her bankruptcy petition was filed.

The plaintiff then challenged the veracity of the debtor's answer regarding the ring. She testified that, in August 1981, she saw the ring on the debtor's finger. At the time, both parties were driving their cars while they were in Ocean City. The plaintiff stated, "I pulled up beside her in the car and she was to my right." N.T. 14.

The only other evidence with respect to the automobile was the testimony of the chapter 11 trustee. He explained that the automobile was transferred by the debtor to an individual who filed a proof of claim in the case. The trustee explained that, in response to the proof, he filed an objection and initiated an adversary proceeding to recover the funds which the creditor derived from the vehicle. The litigation with the creditor-transferee was settled to the trustee's satisfaction.

■ I understand the plaintiff's argument with respect to the ring to be that the debtor has misrepresented the date, if ever, that she disposed of the ring. The plaintiff suggests that the debtor still possessed the ring less than one year before the bankruptcy filing, has concealed it from her creditors and, therefore, should be denied a discharge pursuant to section 727(a)(2).

On the meager evidence before me, I am unwilling to find that the debtor still re-

tained her ring in August 1981. While I do not question the plaintiff's veracity, the circumstances under which she claims to have seen the ring are unreliable.[6] Therefore, the plaintiff has not met her burden of proof. *See* Bankr. Rule 4005.

■ The plaintiff's claim with respect to the automobile is more easily rejected. The evidence, at best, suggests that, by transferring the automobile to one of her other creditors, the debtor intended to effect a preference. However, "[t]he intent to prefer creditors is not a sufficient substitute for the intent to hinder, delay or defraud creditors." 4 *Collier on Bankruptcy*, ¶ 727.02, at 717–16 (15th ed. 1987) (footnote omitted) ("*Collier*"); *accord, In re Somerville*, 73 B.R. 826, 835 (Bankr.E.D. Pa.1987); *In re Ayers*, 25 B.R. 762 (Bankr. M.D.Tenn.1982). Therefore, I conclude that the plaintiff has not proven her case under section 727(a)(2).

■ Next, I consider whether the debtor's discharge should be denied under section 727(a)(3). The purpose of section 727(a)(3) is to insure that the trustee and creditors receive sufficient information so that they can trace the debtor's financial history from a reasonable period in the past to the present. *E.g., Matter of Esposito*, 44 B.R. 817, 826 (Bankr.S.D.N.Y. 1984); *accord, Matter of Decker*, 595 F.2d 185, 187 (3d Cir.1979) (case decide under prior Act); *In re Reitz*, 69 B.R. 192, 197 (N.D.Ill.1986). Collier states:

> To sustain an objection to a discharge under section 727(a)(3) the proof should show (1) a failure by the debtor to keep or preserve any recorded information ... or (2) an act of destruction, mutilation, falsification, or concealment of any recorded information ... by the debtor or someone acting for him; and (3) that by failure to keep such books or records or by the act complained of it is impossible to ascertain the financial condition and

material business transactions of the debtor.

4 *Collier* ¶ 727.03[4], at 727–49.

■ The bankruptcy court has wide discretion in determining whether the debtor's records are sufficient under the statute. *Matter of Decker; In re Brown*, 56 B.R. at 66. In its inquiry, the court should consider all of the debtor's circumstances, including the debtor's education, experience, sophistication, the volume of the debtor's business and the amount of credit extended to the debtor. *See In re Reitz*, 69 B.R. at 197–98; *In re Brown*, 56 B.R. at 66.

In this case, the relevant evidence presented was again meager. The plaintiff testified that she was present at a deposition of the debtor conducted in 1979 and that the debtor stated, at that time, that she did not bring her bank records and similar records to the deposition because she had thrown them out. In addition, the plaintiff introduced into evidence another of the debtor's answers to interrogatories given in this proceeding. In the answer, the debtor stated that, on the date of the bankruptcy filing, the records she had in her possession were: "Information regarding the amount due to the first mortgagee and to the second mortgagee...." Based on this evidence, the plaintiff contends that she has established that the debtor destroyed or failed to keep relevant recorded information, that the burden of justifying the absence of records shifted to the debtor and that the debtor failed to meet that burden. *See* 4 *Collier* ¶ 727.03[4].

In response, the debtor relies on the testimony of the trustee. The trustee explained that it was his understanding, based on (then) Chief Judge Goldhaber's opinion accompanying the order appointing him, *see In re McCall*, 34 B.R. 68 (Bankr.E. D.Pa.1983), that the debtor had not been engaged in business prepetition and that the main estate asset was the debtor's residential real property. This appointment was made two years after the bankruptcy

---

**6.** The plaintiff's claim might have been better framed under section 727(a)(4) (denial of discharge for knowing and fraudulent false oath

made in connection with bankruptcy case). However, I would similarly have concluded that the plaintiff's evidence was insufficient.

filing and, apparently, after a period in which there was active participation in the case by the creditors' committee. It appears that, in fulfilling his duties, the trustee did not personally request documentation regarding the debtor's financial affairs. Rather, he relied on the information he received from counsel for the creditors' committee. The trustee did state that he was satisfied that the creditors' committee's investigation of the debtor's affairs had been thorough. He was also satisfied with the documentation received from the debtor regarding her real estate. With respect to the personal property, the trustee explained that a turnover proceeding was instituted which resulted in a trustee's sale of certain items that remained at the residence. Based on this evidence, the debtor asserts that her discharge should not be denied, emphasizing: (1) her lack of business activity prepetition and (2) the trustee's apparent satisfaction that he had sufficient financial information to fulfill his duties.

While the debtor's apparent lack of documentation is somewhat troubling, I nevertheless conclude, for several reasons, that the plaintiff has not met her burden of proof. First, the evidence of the unavailability of the records is itself not powerful: A witness' brief responses to a few questions at trial, recalling the deposition of the debtor given approximately eight years earlier, is hardly the best source of establishing the absence of the records. The deposition transcript would have been far more persuasive and reliable because it would have set forth, with more precision, the context in which the debtor made the admissions referred to and, quite possibly, further details regarding the absence of the records. Again, I do not doubt the plaintiff's veracity. However, given the public policy disfavoring denials of discharge, her testimony is too slender a reed to support a denial of discharge.

Even more importantly, I must consider the policy underlying the denial of discharge under section 727(a)(3). It appears that plaintiff believes that the absent records could have assisted creditors in inquiring further into the debtor's averments in her answers to interrogatories, that she disposed of various items of personal property "in the late 1970's;" presumably, the plaintiff desired further information regarding the personal property in order to evaluate the possibility of tracing any proceeds of the property or avoiding transfers pursuant to 11 U.S.C. §§ 547, 548. However, the plaintiff came forward with no evidence to demonstrate that the absence of the records hindered, in a material fashion, creditors' ability to ascertain the particulars of the transactions in question. In this regard, it is significant that the debtor was not engaged in business and that the transactions in question involved her personal property. A lower degree of formality and record-keeping can reasonably be expected in such a situation. Certainly, the records would have assisted the creditors in their investigation of the transactions. However, the test under section 727(a)(3) is not whether the records would have been helpful but whether their absence precludes a meaningful inquiry into the debtor's financial history; there may well have been other means by which the creditors could have pursued their legitimate inquiry. I am unwilling to conclude, in the absence of specific evidence of prejudice to the creditors and in light of the trustee's statement that he was satisfied with the investigation into the debtor's affairs in this case, that the severe sanction of denial of discharge is warranted.

For these reasons, I will deny the plaintiff's request that the court issue an order denying the debtor her discharge.