## ANDERSON v. HADDONFIELD NAT. BANK.

### No. 6448.

Circuit Court of Appeals, Third Circuit.
Feb. 10, 1938.

Maurice L. Praissman and Walter R. Carroll, both of Camden, N. J., for appellant.

John A. Riggins and Riggins & Davis, all of Camden, N. J., for appellee.

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the bankruptcy case of William M. Anderson, the Haddonfield National Bank, a creditor, contested his discharge and, from the order of the court refusing it, the bankrupt took this appeal. The objection to the discharge was an alleged violation of the bankruptcy law which forbids discharge where one has "failed to keep books of account or records from which his financial condition and business transactions might be ascertained, unless the Court deems such failure or acts to have been justified under all the circumstances of the case."

So regarding, our first inquiry is whether the bankrupt kept either "books of account or records from which his financial condition and business transactions might be ascertained."

The proofs show that the bankrupt was a physician with a large practice. As is usual with a physician, he kept small books showing the services he rendered to named patients and the payments made by them. As the court stated: "It is true he was engaged in the practice of a profession, and, under the evidence, does not appear to have been interested in speculation or other business enterprises."

In that regard the bankrupt testified:

"Q. What does this page headed 'November 1st' in that book record? A. That records my day's work, November 1st.

"Q. It includes some patients on whom you called? A. It does.

"Q. Does it also include your office patients? A. It does.

"Q. And is a complete record of your calls and your office patients for that day? A. It is. * * *

"Q. Does this November 1st record indicate all of the calls and all of the patients you had that day? A. Absolutely.

"Q. And all of the cash that you received that day? A. Absolutely.

"Q. And you have books like this book, to which I have referred, with November on the front, 1934, for each year from 1929 to— A. To July, 1935.

"Q. At the bottom of page 1 I see 'Cash $32,' what does that mean? A. That's the total amount.

"Q. That you received? A. That I received that day.

"Q. That day. A. Yes.

"Q. Those patients who did not pay you when you made calls, what did you do with regard to them? A. They were put in the ledger.

"Q. Who put their names in the ledger? A. My bookkeeper.

"Q. And that is this Mrs. Ledyard? A. Yes.

"Q. Has she made these records since 1929? A. Until May, 1935.

"How often would she come in your office? A. Every Wednesday evening.

"Q. And would make up this record. A. Yes. * * *.

"Q. Did you offer these books to the trustee? A. I asked him if he wanted my call books.

"Q. Did he understand what your call books were? A. I think so.

722

"Q. Did you show him one of these books? A. I did.

"Q. Did you point out to him what. the books contained? A. I just handed the book to him and told him I had the records. * * *

"Q. How long have you been turning all your money over to Mrs. Anderson? A. Never have turned all of it over to her.

"Q. How long have you turned all of the money, except what money you used to pay bills in cash? A. For twenty-five years, barring pocket money. * * *

"Q. During recent years, you have turned over to Mrs. Anderson all the proceeds from your practice, haven't you? A. Well approximately.

"Q. Kept your pocket money yourself and the rest you turned over to her? A. I paid my drug bills and office expenses.

"Q. But all the other money you made you turned over to Mrs. Anderson. A. I did.

"Q. And with that money she paid the necessary expenses and the other moneys which were required to be expended about your living? A. Yes, sir.

"Q. You are turning your money over to her now, are you not? A. I am."

From these call books which were produced and left with the referee it would seem that an accountant could ascertain what income the doctor had from professional work, which work was his sole source of income. His wife, who went into bankruptcy and who was discharged, corroborated her husband in the fact. She was in unsuccessful real estate speculations, the end of which was that whatever real estate she had was turned over to creditor banks, of which the present objecting bank was one, and to which if we regard the statement made in appellant's brief and not contradicted in appellee's, the bankrupt also assigned a $25,000 insurance policy on his life. As to her disposition of the money turned over to her, her testimony was:

"Q. Mrs. Anderson, where did you deposit the money that Dr. Anderson turned over to you after he paid out these cash expenditures, which he made from time to time?

"Mr. Praissman: During what period of time?

"Mr. Riggins: From 1930.

"A. From 1930, well, most of it was deposited.

"Q. Where, Haddonfield, I suppose? A. 1930, yes.

"Q. And after the Fidelity account was opened in April, 1932, you deposited there mostly, did you not? A. All that I had to deposit, yes. * * *

"Q. You turned over all your properties, except your residence, to the trustee in March, 1932, did you not? A. I think our property was included in that. * * *

"Q. In March of 1932 you turned over all your real estate to Earl V. Westcott, trustee? A. I did.

"Q. At whose suggestion was that made? A. Joseph H. Carr.

"Q. Was he your attorney at that time? A. My attorney at that time.

"Q. Have you received any income whatever from any of these properties since? A. None.

"Q. At the same time you executed this trust agreement, did you also execute a mortgage for $40,000 to the trustee? A. Yes.

"Q. Covering all your real estate? A. Everything we had.

"Q. And for whose benefit was that? A. The bank's.

"Q. Which bank? A. There are four.

"Q. Name them, please. A. Haddonfield National, the Haddonfield Safe, the West Jersey Trust and the Collingswood Trust.

"Q. The money that was turned over to you from time to time by Dr. Anderson, did you use that money in the payment of your obligations and those of Dr. Anderson, as far as you could? A. Over how long a period?

"Q. We will say from 1932 to the time of your bankruptcy? A. I always did that. * * *

"Q. From the time of the execution of the deed of trust, what did you use the money for that Dr. Anderson turned over to you? A. On current expenses."

Commenting on these proofs, the referee said: "I find further under the circumstances and the facts in this case, that while it may be true that as a physician he kept such books of account and records as would show his professional transactions of a business nature, and his financial condition from such professional transactions, yet he is not excusable in his failure to keep such books of account and records as would show his financial dealings with his wife as to the

money which he turned over to her, as obviously, it was turned over to her for investment and speculation, by reason of the fact that for twenty-five years he had been turning over the proceeds of his profession to his wife, and during that time, had kept no books of account (other than his professional account) or bank account."

From the above it will be seen that the referee conceded that the bankrupt "kept such books of account and records as would show his professional transactions of a business nature, and his financial condition from such professional transactions," yet he was to be denied a discharge because, as he views the law, a bankrupt "must have in fairly complete form books or records sufficient to disclose with a fair degree of accuracy, the financial condition and business transactions of the bankrupt at the time of and prior to the filing of the petition." The bankrupt produced records from which his income could be ascertained, he turned it over to his wife, and, had he kept the formal books the referee had held necessary, viz., "in fairly complete form books or records," they would only have stated what is proved, namely, the fact that the money was paid to the wife, and it seems that no effort was made by the exceptant to elicit from Mrs. Anderson any proofs as to what use she made of the money paid to her by her husband.

After argument and full consideration, we are of opinion the referee was in error in refusing to recommend the bankrupt's discharge. The record is therefore remanded to the court below, with instructions to now grant the discharge.