### In re CLARK.

### No. 75339.

District Court, S. D. New York.
June 18, 1942.

Unger & Pollack, of New York City, for bankrupt.

Abraham I. Menin, of New York City, for objecting creditors.

BRIGHT, District Judge.

The bankrupt petitions for a review of the referee's order denying him a discharge for failure to keep proper books and records of account. The objections to the discharge originally filed were in five parts, the first and second of which were that the bankrupt on October 11, 1939, for the purpose of defrauding his creditors, had transferred to his wife all of his interest in the estate of William Brinck, deceased, and which interest was held in secret trust·by the wife and was omitted from the list of assets; third, that the bankrupt made false oath in failing to list his interest in the Brinck estate as an asset and in failing to list his wife as a creditor; fourth, that the bankrupt failed to keep books of account or records of his financial condition; and fifth, that he made false oaths in the proceeding in swearing that his wife had an independent income, that she did not get the money from the bankrupt to make payment of $4,000 in reduction of the mortgage upon the residence property of both of them, that she received said sum from a trust fund established for her benefit, that the bankrupt did not have any interest under any will, and that he had not received any property under any will, whereas, in fact, he had received $7,934.95 from the Brinck estate. The referee dismissed all specifications except the fourth.

The evidence shows ·that the bankrupt lost practically all he had in the stock crash of 1929, with the possible exception of a contingent interest in the Brinck estate which he would not take unless he survived his two sisters. It is shown that that interest was assigned to the wife early in November, 1929, in consideration of the delivery by the wife to the bankrupt of certain shares of stock. The assignment, however, was not reduced to writing until October 11, 1938. The petition in bankruptcy was filed December 12, 1939.

On December 5, 1935, the bankrupt received from the Brinck estate $7,934.95, which he delivered to his wife. That money was paid out, so far as the bank account of the wife shows, between December 5, 1935 and February 1, 1936, $4,450 on the same date that it was received, which I think the evidence shows was paid in reduction of the mortgage upon the residence, and the balance in smaller sums.

On February 8, 1932, the bankrupt closed out his account in the Kingston Trust Company, and the balance of $5.56 was transferred to his wife's account in the same institution, in which she had had an account since March 22, 1929. Since then the bankrupt has maintained no bank account, but all of his expenses and those of his wife have been paid out of the wife's account. They considered it really a joint account.

It also appears that, without his wife's knowledge, the bankrupt opened a brokerage account which was active from February 18, 1931 to December 23, 1931. That account shows through most of its course, that the bankrupt owed the brokers. At only six times during the continuance of the account was there a credit balance and the most that amounted to was $749.70. When it was closed out, there was $1.57 due the bankrupt. Whatever was done in that speculation is fully revealed by documentary evidence.

Since then the only evidence of any business or other financial activity on the part of the bankrupt is his working as salesman on commission. His financial transactions were apparently kept in the check book used by him until he closed out his bank account and since used by his wife. The wife's bank account, since the receipt and disbursement of the $7,934.95, shows that at no time was there a larger withdrawal than $387.50, a larger deposit than $666.77, or a larger balance at any one time than $678. The account has been drawn down as low as 25¢. The payments and deposits shown in this account are mostly in comparatively small amounts, and the check stubs show the payments to have been made largely for household and living expenses.

It was also shown that the bankrupt and wife lived in a house which cost them $30,-000, and which was completed September 12, 1929, just before the stock crash mentioned. It was built upon land owned by the wife and was encumbered by a mortgage of $15,000. The bankrupt claims that he was worth at that time over $1,000,000. Apparently he then owned stocks in a margin account in one brokerage house of the then market value of $649,000, or at least he claimed that amount in a suit brought by the brokerage house against him in 1938, which resulted in a judgment against him of $26,130.32, which is the largest claim filed. It is obvious that his fortune had vanished as many another had done at the same time.

I do not believe that the evidence justifies a finding that the bankrupt has failed to keep or preserve books of account or records from which his financial transac-

tions might be ascertained. On the contrary, I find that he has kept such books of account as would be expected, under all the circumstances of the case, from one similarly situated. In re Weismann, D.C., 1 F.Supp. 723; In re Lepine, D.C., 4 F. Supp. 808, affirmed 2 Cir., 70 F.2d 1017; Anderson v. Haddonfield National Bank, 3 Cir., 94 F.2d 721; Baily v. Ballance, 4 Cir., 123 F.2d 352; In re Pinko, 7 Cir., 94 F.2d 259, 260; In re Neiderheiser, 8 Cir., 45 F. 2d 489, 73 A.L.R. 1152.

This bankrupt apparently has not been in business since before 1929, except for his speculations in 1931 in the stock market. During all of that time, he has been a salesman. Since his losses in the stock market, practically seven years before the petition was filed, he has had no business and no income except as he earned it in the nature of commissions. I wonder who, if anyone similarly situated, would have kept any more records than this man kept of his income and outgo.

The petition to review is sustained and the discharge granted.