**In re Howard GOODMAN and Sheila Goodman, Debtors.**

**Andrew N. SCHWARTZ, as Trustee for the Sunrise Mortgage Company, Inc., William J. Kane, as Trustee for Howard and Sheila Goodman, Plaintiffs,**

v.

**Howard GOODMAN and Sheila Goodman, Defendants.**

**Bankruptcy No. 98–15038DAS. Adversary No. 98–452.**

United States Bankruptcy Court, E.D. Pennsylvania, Philadelphia Division.

Dec. 8, 1998.

Alan S. Carpel, Pfeiffer, Brown & Baldwin, Philadelphia, PA, for Debtors.

William R. Kane, Philadelphia, PA, Trustee in Debtor's case.

Paul B. Maschmeyer, Ciardi, Maschmeyer, & Karalis, P.C., Philadelphia, PA, for Trustee in Debtor's Case.

Andrew Schwartz, Philadelphia, PA, Trustee in Sunrise Case.

Saul L. Langsam, Esquire, Philadelphia, PA, for Debtor in Sunrise Case.

Robert M. Bovarnick, Abrahams, Lowenstein, Bushman & Kauffman, PC, Philadelphia, PA, Special Counsel for Trustee in Sunrise Case.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## MEMORANDUM

DAVID A. SCHOLL, Chief Judge.

The history of the above-captioned proceeding ("the Proceeding") began with the filing of a voluntary corporate Chapter 7 case by Sunrise Mortgage Company ("Sunrise") at Bankruptcy No. 96–17092DAS ("the Sunrise Case") on August 1, 1996. Plaintiff ANDREW N. SCHWARTZ, Esquire, was appointed as trustee in the Sunrise Case ("the Sunrise Trustee").

Sunrise was originated, owned, and operated by HOWARD GOODMAN and SHEILA GOODMAN, husband and wife ("the Debtors"), from 1985 until it went out of business in early 1996. The business of Sunrise was producing residential mortgages and then selling them to investors, which included several banks and two government-sponsored private agencies, the Federal National Mortgage Association ("FNMA") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). *See In re Werts*, 48 B.R. 980, 983 (E.D.Pa.1985).

The only active creditor in the Sunrise Case was Bell Atlantic Properties, Inc. ("Bell"), Sunrise's former landlord. Bell filed an application to take a Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 2004 examination of the Debtors in the Sunrise Case on September 25, 1996. Although the Sunrise Case docket reflects numerous continuances of the F.R.B.P.2004 application and no order granting same, the examinations in fact took place on March 18, 1997. After our considerable prodding of the Sunrise Trustee to either proceed with administration of the Sunrise Case as an asset case or file a no asset report, the Sunrise Trustee first file a no-asset report on June 18, 1997, and then

reversed his field and filed a motion to appoint Bell's counsel as his own special counsel on October 1, 1997.

Only after additional prodding by us did special counsel, on November 26, 1997, attempt to proceed with pleadings necessary to effect administration of the Sunrise Case, by filing an adversary proceeding in the Sunrise Case, at Adversary No. 97–1178 ("the Sunrise Adv."), on behalf of the Sunrise Trustee against the Debtors. The Sunrise Adv. sought to avoid repayments of loans made to Sunrise by the Debtors in the year prior to Sunrise's bankruptcy filing, invoking 11 U.S.C. §§ 544, 547, and 548, as well as state law causes of actions sounding in fraud and negligence.

The Sunrise Adv. complaint was answered and, after a continuance of the trial of January 13, 1998, until April 21, 1998, counsel for the Sunrise Trustee conducted a deposition of the Debtors on April 8, 1998. On literally the eve of trial, April 20, 1998, the Debtors filed the instant voluntary joint Chapter 7 bankruptcy case, at Bankruptcy No. 98–15038SR ("the Debtors' Case"). Plaintiff WILLIAM R. KANE, Esquire, was ultimately appointed as substitute trustee ("the Trustee") in the Debtors' Case. A notice scheduling the meeting of creditors on June 10, 1998, and establishing August 10, 1998, as the deadline for filing complaints challenging the Debtors' discharge or dischargeability of certain debts was issued. The complaint in the Proceeding was filed on August 10, 1998.[1]

We were advised at the most recent of approximately ten status hearings in the Sunrise Case on October 27, 1998, which ultimately resulted in the setting of December 17, 1998, as the date of yet another status hearing, that the Sunrise Case and the Sunrise Adv. could not be resolved until the instant Proceeding in the Debtors' Case was

---

1. We note that the meeting of creditors was initially scheduled in this case before a different trustee on May 26, 1998, and a deadline for filing discharge/dischargeability complaints of July 27, 1998, was established. *See In re King, HLNR Associates v. King*, Bankr.No. 98–13965DWS, Adv. No. 98–501, Slip op. at 4, 1998 WL 834108 (Bankr.E.D.Pa. Nov. 30, 1998), citing numerous authorities for the principle that, under F.R.B.P. 4004(a) and 4007(c), the proper deadline is the date that the meeting of creditors is *first* scheduled, regardless of whether the meeting takes place on that date, *e.g., In re Gordon*, 988 F.2d 1000 (9th Cir.1993); *In re Rhodes*, 61 B.R. 626, 629 (9th Cir. BAP 1986); *In re Datson*, 197 B.R. 1, 4 (D.Me.1996); *In re Kise*, 84 B.R. 36, 37 (Bankr.E.D.Pa.1988); *In re Manuel*, 67 B.R. 825, 826 (Bankr.E.D.Mich.1986); and *In re Betinsky*, 58 B.R. 814, 815 (Bankr.E.D.Pa.1986).

first resolved. As a result of our two years of frustration in bringing these matters to a close, we approached Judge Raslavich, who graciously reassigned the entire Debtors' Case, including the Proceeding, to this court on November 2, 1998. Immediately thereafter, we issued an order of November 4, 1998, which, *inter alia,* scheduled the Proceeding for trial on December 1, 1998. After over six hours of testimony, the trial was completed on that date. All interested parties declined our invitation to render post-trial submissions.

The Complaint of the Proceeding begins with several paragraphs describing Sunrise's entire course business over its last two years as a fraud on FNMA and Freddie Mac because the Debtors allegedly placed personal funds in Sunrise's accounts at strategic points in time to technically meet financial deposit requirements, but would shortly thereafter proceed to withdraw those funds. The transfers back to the Debtors from Sunrise formed the substance of the claims in the Sunrise Adv., which are reiterated in the last seven Counts of the instant Complaint.

As was recognized by counsel for Bell on behalf of the Sunrise Trustee, who tried the Proceeding for the Plaintiffs, these last seven Counts would be considered by us only if the Plaintiffs succeeded in either of the first two Counts of their Complaint. These Counts contain challenges to the Debtors' discharge under (1) 11 U.S.C. § 727(a)(3); and (2) 11 U.S.C. § 727(a)(7), relating to actions relevant to the Sunrise Case. We therefore will focus solely on these latter two claims.

The statutory bases for these claims are 11 U.S.C. §§ 727(a)(3) and (a)(7), which provide as follows:

§ **727. Discharge**

(a) The court shall grant the debtor a discharge, unless-

. . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

. . .

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

. . .

We can further narrow our § 727(a) inquiries by relating a colloquy on pertinent legal issues which developed in the course of the trial of the Proceeding. The Plaintiffs presented evidence which supported the conclusion that the Debtors violated 11 U.S.C. § 727(a)(4)(A) in the Sunrise Case by omitting reference to, *inter alia,* the many repayments of loans to the Debtors on the Sunrise Schedules. As the trial went on, it became clear that the Debtors' only substantive defense to this claim, *i.e.,* that they were misled by their former counsel who represented the debtor in the Sunrise Case but did not represent them in the case, was legally insufficient. *See In re Mumin,* 1998 WL 160992, at *4 (Bankr.E.D.Pa. April 1, 1998); and *In re Landes,* 201 B.R. 399, 408–09 (Bankr.E.D.Pa. 1996) ("bad counsel" defense will not excuse fundamental and obvious § 727(a)(4) disclosure violations).

However, it is also clear that the scope of § 727(a)(7) is confined to acts which occurred within one year from the filing of the bankruptcy case of the debtor whose discharge is at issue, not one year from the filing of the other debtor's case. *See In re Burgess,* 955 F.2d 134, 138 (1st Cir.1992); *Landes, supra,* 201 B.R. at 408; and 3 NORTON BANKRUPTCY LAW AND PRACTICE 2d, § 74.17, at 74–37 (1997). *But see In re Main, Inc.,* 213 B.R. 67, 85 (Bankr.E.D.Pa. 1997), *aff'd in part & rev'd & remanded in part,* 226 B.R. 140 (E.D.Pa.1998), *remanded portions reinstated,* 1998 WL 778017 (Bankr. E.D.Pa. Nov. 4, 1998) (this court stated, in dictum which we now believe was erroneous, that the one year period of the "other debtor's bankruptcy filing" was referenced in § 727(a)(7)). The preparation the Schedules and Statements in the Sunrise Case predated

its filing on August 1, 1996. Because of the delay ultimately attributable to Bell in prosecuting the Sunrise Trustee's claims arising out of the Sunrise Case, the filing of the instant case came after the Sunrise case filing by well over a year. Therefore, the § 727(a)(4)(A) claim raised here, as well as apparently all other claims based on the Sunrise Case, appear to have arisen too long ago to be resurrected by way of § 727(a)(7) in the context of the Debtors' Case.

We are therefore left with the Plaintiffs' § 727(a)(3) claim. The facts supporting this claim are that, at the F.R.B.P.2004 examination on March 18, 1997, the Debtors testified that no books and records of Sunrise had been destroyed and that they were all available for Bell and/or the Sunrise Trustee to examine. The Sunrise Trustee directed the Debtors, at that examination, to hold on to all of these books and records pending further requests from Bell or him for same.

Nevertheless, during the pre-trial Sunrise Adv. deposition of April 8, 1998, when asked specifically about files containing their applications to do business with FNMA and Freddie Mac, the Debtors stated that these documents had been destroyed or thrown out by them in May 1996 shortly before Sunrise went out of business. Later in the deposition, the Husband Debtor seemingly broadened the scope of documents thrown away to include certain documents provided to other lenders and Sunrise's correspondence files.

The Plaintiffs did concede that many boxes of Sunrise's records were made available to them and that numerous requests for specific documents were honored. Ultimately, the significance of the missing documents was posited as a potential "missing link" to explain entries on Sunrise's 1996 tax return which might be indicative of available undisclosed assets, e.g., "building and other depreciable assets" of $355,759 at the end of the tax year and $243,095 "total assets," which the Debtors, who claimed that Sunrise had no assets except $3400, $3200 of which was a security deposit with Bell, were unable to explain.

The Debtors' responses to the Plaintiffs' § 727(a)(3)-related claims were that (1) Sunrise's loans which had ultimately been purchased by FNMA and Freddie Mac constituted less than ten (10%) percent of Sunrise's business and therefore were not very significant to its business; (2) the records retained, including all individual customer files, contained all of the really relevant information concerning Sunrise's business; (3) the records thrown away were "trash" which would have been of no use to the Plaintiffs; and (4) whatever was indicated on the above tax return, Sunrise definitely had no assets left by the time that it filed bankruptcy.

The case law interpreting § 727(a)(3) was reviewed by this court at some length in, e.g., In re Blanchard, 201 B.R. 108, 122–23 (Bankr.E.D.Pa.1996) (declining a § 727(a)(3) claim regarding the debtors' lapses in record keeping regarding a learning center business and a trust in which the wife-debtor had an interest); and In re Goldstein, 123 B.R. 514, 521–23 (Bankr.E.D.Pa.1991) (sustaining a § 727(a)(3) claim against a debtor who, though perhaps innocently, kept very poor records of a real estate Ponzi-like scheme in which she was involved as a coprincipal). These decisions reference the principal relevant Third Circuit authorities, Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir.1993) (all § 727 claims are construed liberally in favor of the debtor); Meridian Bank v. Alten, 958 F.2d 1226 (3d Cir.1992) (lawyer-debtor could cannot avoid effect of § 727(a)(3) by refusing to keep any records of business transactions which should have been recorded); and In re Decker, 595 F.2d 185 (3d Cir.1979) (careless and haphazard bookkeeping by a sophisticated real estate developer was not tolerated).

The important principles, as stated in Blanchard, supra, 201 B.R. at 122–23, are these:

> In order to prove a claim under § 727(a)(3), a creditor must prove that the debtor did not preserve adequate recorded information. See Alten, supra, 958 F.2d at 1232; and Goldstein, supra, 123 B.R. at 522. The creditor objecting to a discharge under § 727(a)(3) must prove the following in order to state a prima facie case for discharge: (1) that the debtor did not keep adequate records; and (2) that the debtor's failure to keep adequate records "makes it

impossible to ascertain the debtor's financial condition and material business transactions." *Alten, supra,* 958 F.2d at 1232. If the creditor meets these initial burdens, the burden then shifts to the debtor to prove justification for the inadequacy of the records. *Id.* at 1233.

Factors which this court states should be considered in determining whether the debtor's financial records are adequate to overcome an objection to discharge under § 727(a)(3) by a creditor are

> "whether a debtor was engaged in business and, if so, the complexity and volume of the business; the amount of the debtor's obligations; whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; the debtor's education, business experience and sophistication; the customary business practices for record keeping in the debtor's type of business; the degree of accuracy disclosed by the debtor's existing books and records; the extent of any egregious conduct on the debtor's part; and the debtor's courtroom demeanor."

*Goldstein, supra,* 123 B.R. at 522. Acceptable excuses for failure to maintain sufficient business records are lack of sophistication with regard to business matters, the debtor's subordinate role in the business operation, and that the debtor is an innocent spouse who relied on the other spouse for record keeping. *Id.* at 523. Consequently, experienced and sophisticated business persons are usually held to a high degree of accountability with regard [to] record keeping. *Alten, supra,* 958 F.2d at 1231.

*See also In re Juzwiak,* 89 F.3d 424, 427–28 (7th Cir.1996).

The Plaintiffs have proven that Sunrise's income tax return included entries which the Debtors could not explain and that the Debtors threw away certain documents related to their former business. However, we do not think that proof of these facts satisfies the Plaintiffs' initial burdens of proving that the Debtors' record keeping was generally inadequate or that it was impossible to ascertain their financial condition on the basis of the

records produced. Indeed, the Sunrise Trustee produced, from the Debtors' records, his own "payment analysis" of every Sunrise transfer from the beginning of 1995 forward. Hence, it was hardly "impossible" to determine Sunrise's and the Debtors' financial conditions from the records produced.

As we suggested to the Debtors' Trustee, if the principal inquiry involved entries on Sunrise's tax return, it would have seemed logical for one of the two Plaintiffs and/or Bell's special counsel to have examined or deposed the accountant who prepared these returns way back on April 24, 1997, especially given the long time for availing themselves of such an opportunity during the litigation of these matters.

■ Having failed to make out a prima facie case based on § 727(a)(3), pursuant to the standards set forth in *Blanchard, supra,* and quoted at pages 10–11 *supra,* we need not proceed further in the analysis set forth there in order to render judgment in favor of the Debtor. As noted in *In re McCoy,* 114 B.R. 489, 500 (Bankr.S.D.Ohio 1990),

> [w]hile § 727(a)(3) could be interpreted in a draconian fashion to require maintenance, preservation, and production of comprehensive records of every minute detail of a debtor's financial and business activity as a precondition to a grant of discharge, the weight of decisional authority unequivocally demonstrates that such an interpretation is wholly in appropriate. *Rhoades v. Wikle,* 453 F.2d 51, 53 (9th Cir.1971) (Act case); *Peoples State Bank v. Drenckhahn (In re Drenckhahn),* 77 B.R. 697, 707 (Bankr.D.Minn.1987); *First Nat'l. Bank v. Williams (In re Williams),* 62 B.R. 590, 593 (Bankr.N.D.Tex.1986); *Broad Nat'l. Bank v. Kadison,* 26 B.R. 1015, 1018 (D.N.J.1983) . . . .

■ Destruction or loss of records does not bar a debtor's discharge unless doing so renders the remaining records clearly inadequate. *See In re Irey,* 172 B.R. 23, 25–26 (Bankr.N.D.Ohio 1994); and *In re Zell,* 108 B.R. 615, 627–28 (Bankr.S.D.Ohio 1989). When debtors provide a "wealth of information," *see In re LaBonte,* 13 B.R. 887, 892 (Bankr.D.Kan.1981), the debtor's failure to

produce certain records in a preferred form, *see Anderson v. Haddonfield Nat'l Bank,* 94 F.2d 721, 723 (3d Cir.1938); and *In re Becker,* 74 B.R. 233, (Bankr.E.D.Tenn.1987), or without gaps, *see In re Graham,* 111 B.R. 801, 806 (Bankr.E.D.Ark.1990), is not decisive.

As is true of many matters which came before us, we are not free from doubt that our instant determination that the Debtors have not in fact destroyed significant records could be erroneous. The Debtors' general credibility was marginal and their scapegoating of their former counsel for what would clearly have been § 727(a)(4) violation in the Sunrise documents had same been timely raised under § 727(a)(7) was not impressive. *Compare In re Somerville,* 73 B.R. 826, 835 (Bankr.E.D.Pa.1987). It is certainly quite possible that the Debtors have destroyed or are withholding pertinent records or information. However, the Plaintiffs, despite having the benefit of a motivated creditor to finance litigation and a long period to prove the likely significance of the missing documentation by a preponderance of the evidence have not succeeding in doing so. The presence of strong untimely claims ultimately does little to serve their cause as well, *compare, e.g., Main, supra,* 213 B.R. at 85–86 (clear § 727(a)(4) claim not timely raised cannot be considered).

We will therefore enter judgment in favor of the Debtors in the Proceeding and allow them to receive their general discharge in the Debtors' Case. We believe that this decision will render the Sunrise Adv. moot and the Sunrise Case apt for a no-asset report and closure. Rather than adhere to our tentative intention to set deadlines for administration of the Sunrise Case after the distribution of non-exempt assets in the Debtors' Case, which has assets apart from the claim in the instant Proceeding, we will retain the December 17, 998, status hearing date in the Sunrise Case and the Sunrise Adv. to revisit the future scheduling and disposition of those matters.