In re Henry **GRAUSZ, M.D., Debtor.**

Henry **Grausz, M.D., Appellant,**

v.

John F. **Sampson, as Liquidator of GFI Commercial Mortgage, LP, Appellee.**

No. PJM 01–1173.

United States District Court, D. Maryland.

April 4, 2002.

Daniel Joseph Tobin, Adam C. Paul, Kirkpatrick and Lockhart LLP, Washington, DC, for Appellant.

Dennis D. Davis, Goldberg, Stinnett, Meyers and Davis PC, San Francisco, CA, Harvey A. Levin, Birch, Horton, Bittner and Cherot, Washington, DC, for Appellee.

## *OPINION*

MESSITTE, District Judge.

### I.

This is an appeal from an Order of the Bankruptcy Court denying Debtor Henry Grausz a discharge of his debts in a Chapter 11 proceeding.

The Bankruptcy Court found that Debtor had breached the terms of a settlement agreement he entered into with GFI Commercial Mortgage, LP, and that he further failed to maintain adequate records under § 727(a)(3) of the Bankruptcy Code and to adequately explain a loss of assets under § 727(a)(5) of the Code. *See* 11 U.S.C. § 727 (2001).

Debtor makes the following arguments on appeal:

1) That the Bankruptcy Court's Opinion fails to comply with the requirements of Fed.R.Civ.P. 52 such that remand to that court is required;

2) That he was not afforded due process because he was not on notice of the theory upon which the Bankruptcy Court ultimately concluded that he had breached the settlement agreement;

3) That the Bankruptcy Court erred in allowing Plaintiff John F. Sampson, Liquidator of GFI Commercial Mortgage, LP, to bring a discharge action against him in contradiction of the settlement agreement Debtor had with Plaintiff;

4) That Debtor presented sufficient evidence to defeat the claim that he failed to maintain adequate records from which his true financial condition could be derived under § 727(a)(3) of the Code; and

5) That he presented sufficient evidence to defeat the claim regarding loss of assets under § 727(a)(5) of the Code.

The Court will AFFIRM the Bankruptcy Court's decision.

### II.

Debtor filed his Chapter 11 Petition on December 29, 1997. A few months before, specifically on October 29, 1997, the Superior Court of the State of California in and for the County of Marin had entered a judgment against him in favor of certain investors in GFI Commercial Mortgage, LP, in the sum of $5.17 million dollars plus interest. Eventually, John F. Sampson, as Liquidator of GFI, filed a proof of claim in Debtor's bankruptcy proceeding in the amount of $6,497,878, later reduced by agreement to $4 million dollars. Sampson is Plaintiff in the present proceeding.

In May of 1998, Debtor entered into a settlement agreement with Plaintiff and others. Under the terms of the agreement, in exchange for Debtor not appealing the Marin County judgment, Plaintiff agreed to waive the right to challenge Debtor's right to a discharge in bankruptcy, conditioned on Debtor's representation and warranty that his "Amended Bankruptcy Schedules will, to the best of [his] knowledge, contain a complete, true and correct listing of all of [his] existing assets as of December 29, 1997."

The settlement agreement provided that Debtor would amend his schedules of assets and liabilities within 10 days after the Bankruptcy Court approved the settlement. On June 22, 1998, following approval of the settlement by the Bankruptcy Court, Debtor filed amended schedules of assets and liabilities pursuant to the settlement agreement. Schedule B of the amended schedules identified his household goods and furnishings as "Goods held in storage pursuant to order of Marin

County Superior Court. See attached list." The "attached list" was a household goods descriptive inventory dated September 12, 1996, essentially a packing list prepared for the common carrier which was engaged to transport the goods from California to Maryland. Debtor listed the value of this personal property in his amended schedules at $150,000.

■ Debtor failed to include in his amended schedules any property that he held as community property with his wife, although at the time he was involved in divorce proceedings in the State of California and the division of the community property had yet to be resolved.[1]

As to some omitted property, community or otherwise, Debtor testified before the Bankruptcy Court that it may have been stolen, although he indicated that he had made no report of such incident or incidents to the police nor had he made any claim for reimbursement to any insurer.

Beyond the packing slip for the warehoused property listed on his amended schedules, Debtor provided no other documentation or receipts, appraisals or the like with regard to nature and extent of his personal property.

Against this background, Plaintiff alleged in the adversary proceeding that Debtor had breached his warranty under the settlement agreement. When the Bankruptcy Court found in Plaintiff's favor, Debtor brought this appeal.

## III.

A district court hearing an appeal from a bankruptcy court reviews the bankruptcy court's findings of fact under the clearly erroneous standard. Fed. R. Bank P. 8013. Conclusions of law are reviewed *de novo*. See *In re Healthco Int'l, Inc.*, 132 F.3d 104, 107 (1st Cir.1997).

## IV.

Fed.R.Civ.P. 52, applicable to adversary proceedings by virtue of Adversary Rule 705(2), provides that the trial court "shall find the facts specially and state separately its conclusions of law thereon." Fed. R.Civ.P. 52. While the findings and conclusions "need not include 'punctilious detail,'" they "must ... at least be sufficient to permit meaningful appellate review." See *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir.1999) (citation omitted). Debtor argues that the Bankruptcy Court's opinion fails to satisfy these basic requirements because it contains no findings of fact to support the conclusion that he breached the warranty in the settlement agreement that his assets would be listed in the amended schedules "to the best of his knowledge."

A review of the record belies this argument. The Bankruptcy Court outlined in considerable detail what property Debtor had disclosed in the schedules and what he had omitted.

Debtor also takes the Bankruptcy Court to task for making a "sweeping and unsupported statement about the value of the purportedly missing property," presumably referring to the Bankruptcy Court's indication that it appeared that "more than $100,000.00 in personal property is unaccounted for by the Debtor." While Debtor argues that no evidence in the record supports this statement, in fact Debtor's own contention in his California divorce proceeding that the community property he

---

1. Under California law, marital property held as a community during marriage remains as such until a property division has been agreed upon and approved by the divorce court. *In re Mantle*, 153 F.3d 1082, 1085 (9th Cir.1998).

Counsel represented to this Court that, even as of the time of oral argument before the Court, the division of the parties' community property had not been resolved.

and his wife owned exceeded $750,000 in value leads easily to this conclusion and more. Half of $750,000 would be $375,000. Subtracting the $150,000 in property allegedly held by the Debtor in a warehouse in Maryland, at least $225,000 would remain unaccounted for. This supports the Bankruptcy Court's conclusion that more than $100,000 in personal property was unaccounted for.

Further, in describing the state of Debtor's financial records as in "disarray" and a "jumble," the Bankruptcy Court had ample support in the record. The evidence shows, among other things, that Debtor had his secretary in California pack his personal property and ship it to him in Maryland, leaving it to her to supply a pure "guesstimate" that its value was $150,000. No appraisal was ever commissioned to determine the actual value of the property nor did Debtor himself ever bother to determine its value. Beyond that, Debtor adduced no books or records relative to the property's value.

Debtor's suggestion that the case should be remanded to the Bankruptcy Court because its opinion fails to articulate findings within the meaning of Fed.R.Civ.P. 52 is meritless.

## V.

Debtor next argues that he did not receive adequate notice of the basis upon which the Bankruptcy Court ultimately concluded that he had breached the settlement agreement because Plaintiff's Complaint in no way alleged that Debtor had breached the settlement agreement by failing to include community property on his amended schedules.

■ In addition to pointing out that this argument was raised for the first time on appeal, Plaintiff invites the Court's attention to the language of the Complaint. It clearly claims that, "(a)mong other inaccuracies, the description of property in the Amended Schedules omitted a significant number of articles of personal property," and goes on to describe all manner and variety of such omitted personalty. The Court is aware of no legal authority that requires a party alleging that property has been omitted from bankruptcy schedules to characterize that property as solely owned, or owned in joint tenancy, as tenant by the entireties or as a tenant in community with a spouse. Apart from this, not only did Debtor's trial counsel make specific reference to "a dispute in divorce court over what to do with this stuff [marital property]," but Debtor never asked the Bankruptcy Court to exclude or not consider Plaintiff's evidence concerning community property in ruling upon the case.

Finally, Plaintiff points out that had Debtor raised the argument of lack of notice of this issue at the trial court, Plaintiff's counsel could have introduced additional evidence or correspondence, discovery and other communications that reflected that Debtor was in fact on notice as to this issue.

Debtor's claimed lack of due process comes too late and, in any event, is totally at odds with the record.

## VI.

■ Debtor argues that, assuming that he breached the settlement agreement, Plaintiff was not entitled to object to his discharge in bankruptcy. At most, Debtor says, Plaintiff can recover damages caused by the breach; he cannot rescind the entire agreement. Plaintiff's response is that he did not seek rescission of the agreement, that the Bankruptcy Court did not award rescission and that in fact it upheld the agreement.

Although Debtor raised this argument in his trial brief before the Bankruptcy Court, he does not appear to have pressed

it with the Bankruptcy Court at the time of that court's decision. In any event, this Court agrees entirely with Plaintiff. The settlement provides that "[a]s a condition of the enforceability of this Agreement," Debtor will "to the best of his ability," list his assets completely, truthfully, and correctly and "[i]n addition," that any breach of that warranty will "be deemed a postpetition breach of covenant" and will give rise to a claim "for damages, which claim shall survive any resolution of the ... Bankruptcy Case." This plainly means that, if Debtor is not complete, truthful and correct in filling out his schedules, Plaintiff may *both* object to his discharge in bankruptcy and "in addition" obtain damages.

The Bankruptcy Court could properly grant Plaintiff both forms of relief.

## VII.

■ Debtor next argues that he never breached the settlement agreement because he did everything required of him, *i.e.*, he listed his personal property to the "best of his knowledge." His knowledge, he contends, was knowledge of what property was listed on the packing list for the property held in the warehouse. As for community property, he contends that he did not know that he was obliged to list it on his schedules. Plaintiff responds that at a minimum Debtor had an obligation to be "scrupulous in providing notice of all assets." *In re Woodson*, 839 F.2d 610, 615–16 (9th Cir.1988).

Debtor suggests that in order for liability to attach it must be shown that his knowledge of the omitted property was "actual" as opposed to constructive. He cites, as authority for the proposition, definitions of "knowledge" in *Black's Law Dictionary* and the Restatement (Second) of Contracts. In the context of this case, the Court disagrees. Debtor "warranted" in the settlement agreement that he would disclose his assets "to the best of his ability." A "warranty" has been defined as "a promise that a proposition is in fact true ... An assurance by one to an agreement of existence of fact upon which the other party might rely. It is intended precisely to relieve the promisee of any duty to ascertain facts for himself, and amounts to promise to indemnify promisee for any loss if the fact warranted proves untrue." *Black's Law Dictionary* 1586 (6th ed.1990).

■ Moreover, to the extent that every contract contains an element of good faith performance, a party to a contract who undertakes to act "to the best of his knowledge" at a minimum implies that he will make a good faith effort to ascertain the true state of the facts. *See* Restatement (Second) of Contracts § 205 (1979) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement"); *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 683, 254 Cal.Rptr. 211, 765 P.2d 373 (1988) Here, of course, Debtor in no way undertook to ascertain the true facts, merely relying on his assistant across the continent to pack boxes containing many of his personal items and leaving it to her to arbitrarily assign a value to those items.[2] It was therefore well within the discretion of the Bankruptcy Court to find that the Debtor acted with "wilful blindness" as to the state of his assets, an attitude sharply

2. Debtor argues that his access to the warehoused property, including his knowledge of its extent, was limited because his wife secured a temporary restraining order from the California court blocking his access to it. That fact, however, in no way diminished his responsibility to be candid with the Bankruptcy Court about the nature and extent of those assets. To the extent there may have been an impediment to Debtor's access to the items for inventorying and appraisal purposes, he could easily have enlisted the assistance of the Bankruptcy Court to overcome it.

inconsistent with his obligation under the settlement agreement.[3]

As for the community property, it bears repeating that Debtor was well aware that it existed. In his divorce proceeding, Debtor acknowledged that his wife was in possession of the parties' community property—as Debtor testified, "again, most of the more valuable items that were in our family residence were previously taken by [my wife]." Plaintiff also points to Debtor's admission that he valued his personal property at $750,000 both as of January 1997 and as of the time he filed for bankruptcy protection. Debtor was equally aware that he had a claim upon the community. He knew that he and his ex-wife had not reached an agreement as to its division and that both preserved their claims with respect to the division. Assuming Debtor somehow still believed he was not required to list the property in his bankruptcy schedules—a doubtful proposition—he runs afoul of the maxim "ignorantia legis neminem excusat." *Black's Law Dictionary* 747 ("ignorance of law excuses no one"). The law is crystal clear that community property is property that must be listed in a bankruptcy proceeding. *See* 11 U.S.C. § 541(a)(2). This was no mere oversight involving assets of marginal value, but involved a major category of assets upon which Debtor unquestionably knew he had a claim.[4]

There was ample basis for the Bankruptcy Court to conclude that Debtor breached his warranty under the settlement agreement when he failed to list his assets in full.

## VII.

■ Debtor contends that the Bankruptcy Court erred in finding that he failed to maintain adequate records in violation of § 727(a)(3) of the Bankruptcy Code.

■ That section provides in relevant part that a Debtor should not be denied his or her discharge unless:

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). The loss of records will not bar discharge unless it is "impossible to ascertain the debtor's financial condition and material business transactions." *In re Goodman*, 227 B.R. 626, 631 (Bankr. E.D.Pa.1998) (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir.1992)).

Debtor complains that the Bankruptcy Court baldly concluded that his records "appeared incomplete and in disarray," offering no factual findings to explain that conclusion. He points out that, in marked contrast, the Creditors Committee and Debtor were able to propose a joint plan which the Court itself approved, an indication that both the creditors and the Bankruptcy Court itself were satisfied with Debtor's financial disclosures.

But, in fact, the Bankruptcy Court went beyond merely characterizing Debtor's

---

**3.** The Court notes that "reckless indifference to the truth" has been deemed the equivalent of fraudulent intent for purposes of Section 727(a). *See, e.g., In re Tully,* 818 F.2d 106, 110–11 (1st Cir.1987); *In re Ingle,* 70 B.R. 979, 983 (Bankr.E.D.N.C.1987). Neither the Bankruptcy Court nor this Court, however, is required to find that Debtor acted fraudulently in this case. It is enough by reason of the

warranty Debtor gave in the settlement agreement that he acted neglectfully.

**4.** Indeed, the Court notes that on the basis of the record evidence, the Bankruptcy Court could also have found that Debtor had actual knowledge that he was required to list this community property on his amended schedules.

records as "incomplete and in disarray." It found that Debtor had failed to provide whole blocks of records. It observed, for example, that Debtor "did not explain what happened to the records that he caused to be shipped out prior to the United Van Lines move together with the office furniture. The existence of this earlier transfer was elicited by him in cross-examination of his former wife."

Moreover, Debtor produced no documents at all relating to his ownership and disposition of missing property. To the extent that receipts, invoices or insurance documents existed which reflected the nature and extent of certain property, Debtor claimed that his ex-wife had those documents. She, on the other hand, denied that she had the records, a contradiction Debtor could not satisfactorily explain. At the same time, Debtor admitted that he made no effort to locate the records. As for Debtor's contention that he provided extensive documents to the Creditors Committee during negotiation of the Joint Plan of Liquidation and that those documents were available for Plaintiff to review, Plaintiff points out several weaknesses in this argument. First and foremost, Debtor in no way indicates that he ever reviewed the documents or even knew to what they referred. Additionally, Debtor was found by the Bankruptcy Court to have been derelict in providing discovery in this case, ultimately responding in limited fashion and then only after being directed by the court to produce documents, with the express warning that if Debtor did not turn over the documents promptly, they would be deemed inadmissible at trial.

The Bankruptcy Court found Debtor to be a sophisticated business person—"a man of important affairs"—of the type generally held to a highest level of accountability of record-keeping. *See Alten,* 958 F.2d at 1231. It was not clearly erroneous in finding that Debtor failed to maintain accurate records regarding his ownership of personal property.

## VIII.

█ Debtor's final claim is that the Bankruptcy Court erred in finding that he failed to adequately explain a loss of assets under Bankruptcy Code § 727(a)(5).[5] The court concluded that Plaintiff had established a *prima facie* case under that Section and that Debtor had not rebutted it.

Referring to Debtor's testimony that he thought that his wife was in possession of their property, including valuable works of art, or that others with access to the house may have stolen some of it, the Bankruptcy Court found these explanations "vague and indefinite." The court also referred to the lack of documentation as to these allegations, noting that Debtor had never filed an insurance claim or a police report for the missing property.

Debtor argues, in response, that for approximately three years after his personal property was shipped to Maryland in September 1996, he had no access to it, that he never spoke to his wife for any purpose in this regard, and that he never found out what may or may not have been shipped. He also indicates that his life was in significant personal turmoil by reason of his divorce and that therefore it was not surprising "that a small number of personal items were missing."

---

**5.** Section 727(a)(5) provides in relevant part that a debtor shall not be denied his or her discharge unless:
  the debtor has failed to explain satisfactorily, before determination of denial of dis-

charge, under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.
11 U.S.C. § 727(a)(5).

The record, of course, belies any suggestion that the omission of community property was necessarily a "small amount," approaching as much as $225,000. Beyond that, Debtor's explanations were not only "vague and unsatisfactory," they were in the Bankruptcy Court's opinion as the trier of fact highly suspect as to their truthfulness. The court noted that throughout the trial, "[it] has had the continuing impression of [Debtor] that he is less than truthful."

The Bankruptcy Court was not clearly erroneous in finding as a matter of fact that Debtor did not satisfactorily account for the loss of property.

### IX.

For all the foregoing reasons, the decision of the Bankruptcy Court dated March 13, 2001 will be AFFIRMED.